IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

STEPHEN R. BROWN,

        Plaintiff,

v.                                        CIVIL ACTION NO. 3:07-0418

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed his applications on August 10, 2004, alleging disability commencing May 31, 2004 as a result of emphysema, arthritis and chest pain. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was fifty one years of age and had obtained a high school education. His past relevant employment experience consisted of work as a

locksmith, machinist and machinist supervisor. In his decision, the administrative law judge found plaintiff suffered from "shortness of breath, neck pain, back pain, mild vision loss, and alcohol abuse," impairments he considered severe. Though concluding that plaintiff was unable to perform his past relevant work,[1] the administrative law judge determined he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rules 202.14 and 202.21 of the Medical Vocational Guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff testified that he stopped working because his vision was too bad to do detail work, and his back hurt to bend over a work bench all day. Though he stated his back is "constantly uncomfortable," he estimated he could lift up to twenty-five pounds, repetitively lift ten pounds, and sit for three to four hours continuously. He admitted taking no medication, either prescription or over-the-counter, for his pain.[3] A May 2002 cervical spine x-ray was interpreted as showing degenerative disc disease at the C5-6 level.

When examined by Dr. Gobunsuy, the Commissioner's consultative evaluator, plaintiff reported constant pain in his neck with "off and on" low back pain. Though the cervical spine was tender, the lumbar spine was not, and this examiner characterized range of motion in both areas as "satisfactory." Plaintiff had no difficulty walking on his heels, toes, heel-to-toe, squatting or standing

---

[1]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

[3]Plaintiff testified he "[j]ust bear[s] with it."

on one leg at a time. There is no indication he received any ongoing treatment for either of these conditions.[4] While he also reported problems with numbness and tingling in his legs and feet which limited his ability to walk, again there is no evidence of treatment for these complaints, and no neurological abnormalities were documented during any of the physical exams.

Following an apparent myocardial infarction in 1999,[5] plaintiff was evaluated only occasionally for chest pain, which was generally described as atypical. The most recent record is a May 16, 2006 emergency room visit wherein cardiac enzymes were considered negative for myocardial infarction, but plaintiff was admitted for further monitoring. No additional evidence was submitted, suggesting the total work up was likely negative. This history and plaintiff's back and neck pain were clearly factors in the administrative law judge's finding that he could tolerate no more than light level work with only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching or crawling and had a need to avoid temperature extremes, work around unprotected heights or dangerous, moving machinery and the climbing of ladders, ropes or scaffolds.

Plaintiff has also been treated for chronic bronchitis and chronic obstructive pulmonary disease, confirmed by chest x-ray. Very little treatment, however, is documented since plaintiff's alleged onset date. While at the emergency room in May 2006, nebulizers were given for plaintiff to use, and his lungs were clear with a prolonged expiratory phase of respiration, similar to Dr. Gobunsuy's observations in November of 2004. It does not appear pulmonary function testing has been conducted since August 2000, when results were consistent with a mild obstructive defect,

---

[4] Plaintiff did testify he could not afford medical treatment because he did not have a medical card.

[5] While plaintiff has stated repeatedly that he had two myocardial infarctions in 1999, the medical evidence appears to address only one.

hyperinflated lungs with air-trapping and increased airway resistence. Despite his breathing problems, plaintiff has continued to smoke heavily. Nonetheless, the administrative law judge determined he should avoid high humidity and excessive dust, fumes and gases in addition to the other limitations he found.

As noted, plaintiff also complained of vision loss and wore glasses, though he submitted no evidence he had sought treatment or examination from an eye doctor. The Commissioner had him examined by Dr. Joseph LoCascio, an opthamologist, on January 4, 2005. Plaintiff reported a decrease in vision over the previous six months, that things were blurry, it was harder to read, and he had become unable to drive. At the October 19, 2006 hearing, however, he indicated he did drive short distances at least a couple of times per week. Testing revealed corrected distance vision of 20/40 -1 in the right eye and 20/25 +2 in the left. Corrected near vision was 20/30 on the right and 20/20 on the left. Dr. Ricard, who performed a physical examination of plaintiff on July 17, 2006 to aid in determining his eligibility for a medical card and/or welfare benefits, reported visual acuity was 20/20 in each eye. This degree of vision limitation is hardly consistent with legal blindness as plaintiff reported to Ms. Perdue.[6]

The administrative law judge, in reviewing the evidence, classified plaintiff's vision loss as "mild" and determined it would limit him only from performing work requiring "very fine visual acuity." Plaintiff objects to this characterization, claiming the administrative law judge could not interpret this "raw data" and should have sought advice from a medical expert. The Court finds that, in this instance, the conclusion the administrative law judge drew was reasonable and not beyond

---

[6]Visual acuity of 20/40 corresponds with a fifteen percent loss in vision, while 20/25 is only a five percent loss. 20/20 is, of course, considered normal vision. Attorney's Dictionary of Medicine, Vol. 5, Figures S-4, S-4a (2007).

his competence or his authority.[7] Dr. LoCascio did not state that the corrected visual acuity measurements obtained were indicative of severe vision loss, nor did he conclude plaintiff's visual ability would limit him. Further, of the two state agency medical advisors who reviewed the record, one found no limitations due to plaintiff's vision, and the other assessed visual limitations in one eye based on findings documented by Dr. Gobunsuy. While these findings are in conflict with those from Dr. LoCascio, it is observed that the latter is a specialist in ophthalmology, and his corrected visual acuity measurements, considered with those from Dr. Ricard, and the absence of any comments from other examiners relative to decreased vision, clearly support the administrative law judge's findings in this regard.

While reports from 1999-2001, well before plaintiff's alleged onset date, document that he received medication for depression, there is little mention of it in the more recent evidence. He did not allege it when his application was filed, and the only references to mental functioning at the hearing were with regard to medications, with plaintiff indicating he "think[s]" that Vistaril is prescribed for anxiety, and his comment that he has noticed he gets agitated more easily than before.

At a consultative psychological evaluation in May 2005, plaintiff reported he felt depressed a couple days per week for a few hours, and he was worried more since he had lost his job, but "[h]e reports being able to control the worry most of the time." His mood was "somewhat" depressed and agitated at times; affect "somewhat" restricted; concentration and persistence mildly deficient; and remote memory markedly deficient. The diagnosis was depressive disorder NOS, anxiety disorder NOS and maladaptive health behaviors affecting physical condition, which refers to plaintiff's

---

[7]See, Tyler v. Weinberger, 409 F.Supp. 776, 788 (4th Cir. 1976); Edwards v. Bowen, 672 F.Supp. 230, 236 (E.D. N.C. 1987).

continued smoking despite having lung problems. The state agency psychologist reviewing the record concluded there was no severe mental impairment established.

The administrative law judge ultimately found that plaintiff had no medically determinable mental impairment. This was based on his determination that plaintiff had not established the existence of any non-substance induced depressive or anxiety disorder. This conclusion in turn was drawn from the administrative law judge's inability to find any history of "sustained sobriety" at any time in the record. Plaintiff, on the other hand, admits a history of alcohol use but testified he never had legal or work-related problems because of it. The records reflect he reported varying degrees of alcohol use, with the highest amount being twelve beers per day reported to Dr. Gobunsuy in November 2004 and the lowest one to two beers per day in plaintiff's hearing testimony. Although he smelled of alcohol at both consultative examinations, neither Dr. Gobunsuy nor Ms. Perdue observed any signs of intoxication or diagnosed alcohol abuse.

The Court finds that the administrative law judge's determination that plaintiff's alcohol use/abuse is "severe and continuing,"[8] and his disregard of the report from the consultative psychological evaluator are not supported by substantial evidence. It is concluded, however, that this error is harmless and that remanding this case for further analysis of on this issue would not result in a different outcome. The evidence clearly does not suggest any significant limitations due to depression or anxiety, and Ms. Perdue's report does not indicate plaintiff had difficulty with

---

[8]Later in the decision, the administrative law judge makes the seemingly conflicting statement that plaintiff's "polysubstance abuse is not a material factor in the resolution of this claim" and notes plaintiff has no history of arrests or work-related problems attendant to his alcohol use, adding "so I find no specific DA and A [drug abuse and alcohol] limitations."

interaction,[9] mood, affect, speech, thought processes, concentration, persistence, pace or immediate or remote memory. The state agency psychologist who reviewed this evidence was convinced plaintiff did not have a severe mental impairment. Given these circumstances, the Court finds remand would be unjustified[10] and that the remainder of the administrative law judge's decision is supported by substantial evidence and should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge, and that, in accordance with the provision of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection

---

[9] While plaintiff was noted to be defensive initially upon examination, he relaxed as the interview went on and even apologized for his defensive behavior.

[10] See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming decision despite error "because there is no question but that [the administrative law judge] would have reached the same result notwithstanding his initial error; see also, Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) stating that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

is made in accordance with the provisions of 28 U.S.C. § 636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file this Findings and Recommendation and mail a copy of the same to all counsel of record.

ENTER: June 29, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE